NOT DESIGNATED FOR PUBLICATION

No. 128,233

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESSICA LIBERTY WOLF,
*Appellant.*

MEMORANDUM OPINION

Appeal from Saline District Court; AMY NORTON, judge. Submitted without oral argument. Opinion filed July 10, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: Jessica Liberty Wolf appeals from her convictions for possession of methamphetamine, possession of fentanyl, and possession of drug paraphernalia, claiming erroneous jury instructions. After review, we find no error by the district court and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

While on patrol in October 2022, Deputy Jacoby Williams observed a vehicle failing to signal before changing lanes. Williams initiated a traffic stop, and the driver identified himself as Gabriel Smith. Two other occupants were inside the vehicle—Jessica Wolf and Kody Peterson. Williams asked Smith to exit the vehicle. As Smith exited the vehicle, a package fell from his lap to the ground.

Officer Joshua Kibler, a K-9 handler, and Williams' shift partner, Officer Kevin Shankle, responded to the traffic stop. The K-9 unit performed a free air sniff around the vehicle's exterior and alerted under the driver's side door. After the K-9 alerted, Williams performed a search of the vehicle. Inside, he found a black purse that contained a smaller black bag, two debit cards stamped with Wolf's name, and four to five syringes. The smaller black bag contained a glass vial with a rock, a glass vial with a liquid, a used needle, cotton filters, and a burnt silver spoon.

Williams searched Smith's person and found other drug paraphernalia. He also searched Wolf's person but did not find any drug paraphernalia on her person. Before arresting Wolf, an officer asked her about the purse's ownership and contents. Wolf denied ownership and claimed Smith owned the small black bag found in her purse. The items found in the purse were sent to the Kansas Bureau of Investigations (KBI) for testing. The Bureau's tests detected fentanyl and methamphetamine.

The State charged Wolf with three counts: (1) possession of methamphetamine, a drug severity level 5 felony; (2) possession of fentanyl, a drug severity level 5 felony; and (3) possession of drug paraphernalia, a class B nonperson misdemeanor. The State alleged the syringes were drug paraphernalia.

Before trial, Wolf's codefendant, Smith, passed away. At trial, Peterson testified for the State. He recalled how he and Wolf went to Wichita to visit his mother and stopped at Wolf's friend's home before returning to Salina. While at the friend's home, Wolf agreed to give Smith a ride to Lindsborg. Smith drove Wolf's vehicle so Wolf could rest. Peterson testified that Smith stopped for gas in McPherson, took Wolf's purse into the gas station to pay for the gas, and, upon returning to the vehicle, placed the purse under the driver's seat. He also testified that they stopped in Lindsborg, where Smith went into a home and returned with a small make-up bag.

A KBI forensic scientist testified that the vials in the bags tested positive for methamphetamine and fentanyl. Williams testified that the syringes would be used to inject the substances.

Wolf did not object to any of the jury instructions. Jury instruction number 5 instructed the jury:

"In determining whether an object is drug paraphernalia, you shall consider, in addition to all other relevant factors, the following:

- "Statements by an owner or a person in control of the object concerning its use.
- "The proximity of the object, in time and space, to a direct commission of a drug crime.
- "The proximity of the object to controlled substances.
- "The existence of any residue of controlled substances on the object.
- "The existence and scope of legitimate uses for the object in the community.
- "Any evidence that alleged paraphernalia can be or has been used to store a controlled substance or to introduce a controlled substance into the human body as opposed to any legitimate use for the alleged paraphernalia."

3

The district court also instructed the jury to "consider and weigh everything admitted into evidence" and to "disregard any testimony or exhibit which [the district court] did not admit into evidence."

In closing argument, the State directed the jury to the syringes' location in proximity to the drugs on the possession of paraphernalia charge. Wolf's closing argument centered on Smith's possession of the drugs and that the State proved Smith possessed the items, not Wolf. The jury convicted Wolf on all charges.

At the sentencing hearing, Wolf moved for a new trial, alleging that the verdict was contrary to the evidence and the law. She also moved for a judgment of acquittal. The district court denied both motions.

The district court imposed a controlling sentence of 25 months' imprisonment. With a criminal history score of H, Wolf was presumptive probation. The district court suspended the sentences and placed Wolf on 12 months of probation supervision.

Wolf appealed.

ANALYSIS

On appeal, Wolf makes two claims of error, both related to jury instructions. First, she asserts the district court erred by failing to provide a limiting instruction on the admission of evidence related to Smith. Second, she contends the district court erred by giving a jury instruction that was not supported by the evidence.

*Preservation*

Wolf failed to request the limiting instructions she claims the district court should have given, and she failed to object to the district court's inclusion of the "statements factor" in its instruction on whether the syringes were drug paraphernalia. Accordingly, both issues will be reviewed for clear error. See K.S.A. 22-3414(3).

*Standard of Review*

"When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless.

". . . At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record. [Citation omitted.]" *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

"Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). When a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine whether it was clearly erroneous. K.S.A. 22-3414(3). We apply the clear error standard when a defendant fails to request the instruction, even when the instruction supported the defendant's theory of defense. See *State v. Waldschmidt*, 318 Kan. 633, 646, 546 P.3d 716 (2024).

I.       *The District Court Did Not Err When It Failed to Give a Limiting Instruction*

Wolf argues that the district court should have given limiting instructions in relation to Smith's drug possession on Wolf's arrest date. She alleges that the evidence of Smith's drug possession was K.S.A. 60-455 evidence and district courts are required to give a limiting instruction whenever such evidence is introduced.

The State contends that the evidence of Smith's possession was not K.S.A. 60-455 evidence. Rather, Smith's possession was evidence of the events surrounding the crime at issue, not propensity evidence. And the State alleges that, even if the district court erred when it did not give the limiting instruction, the error was not clearly erroneous because no evidence indicates the jury imputed Smith's guilt to Wolf.

K.S.A. 60-455(a) states:  "[E]vidence that a *person* committed a crime or civil wrong on a *specified occasion*, is inadmissible to prove *such person's disposition* to commit crime or civil wrong as the basis for an inference that *the person* committed another crime or civil wrong on another specified occasion." (Emphases added.) "K.S.A. 60-455 does not prohibit the admission of evidence about other crimes and civil wrongs if the evidence relates to acts committed as part of the events surrounding the crimes or civil wrongs at issue in the trial." *State v. Sieg*, 315 Kan. 526, Syl. ¶ 2, 509 P.3d 535 (2022).

K.S.A. 60-455 does not apply to Smith's drug and drug paraphernalia possession because the State did not use the evidence to show Smith's propensity or disposition to commit the drug possession crime. The State used the evidence to explain what prompted the officers to search the vehicle. The officers searched the vehicle because, when Smith exited the vehicle, drugs fell from his lap. Instead, the evidence of Smith's possession related to the events surrounding the vehicle's search and the subsequent search of Wolf's purse.

A limiting instruction based on K.S.A. 60-455 was not legally required or appropriate. The evidence of Smith's possession was not evidence of other crimes or civil wrongs used to prove his disposition to commit the crime on this occasion. The evidence related to the events surrounding the vehicle search and the search of Wolf's purse, which were both issues at her trial. Thus, the district court did not err when it did not give a limiting instruction.

II. *The Jury Instruction on Drug Paraphernalia Properly Stated the Law*

Wolf contends that the district court erred when it included the "statements by an owner or a person in control of the object concerning its use" factor in jury instruction No. 5 because Wolf did not make any statements concerning the use of the syringes and the jury could have found Wolf's lack of a statement to be inculpatory. She argues that the district court erred because the notes on use in the Pattern Instructions of Kansas (PIK) state to "include only those factors in K.S.A. 21-5711 that are supported by evidence." PIK Crim. 4th 57.170 (2023 Supp.). She did not make any statements concerning the syringes' use, so that factor should not have been included.

The State does not argue whether the instruction was legally or factually appropriate; it alleges that the instruction did not affect the jury's decision because there was no contention that the syringes were not drug paraphernalia.

PIK Crim. 4th 57.170 states relevant factors for the jury "[i]n determining whether an object is drug paraphernalia," including "[s]tatements by (an owner) (a person in control) of the object concerning its use." Jury instructions are reviewed as a whole, and appellate courts do not isolate any one instruction. "If the instructions properly and fairly state the law as applied to the facts in a case, and the jury could not have been reasonably misled by them, those instructions will not result in reversible error even if they were in some manner erroneous." *State v. Craig*, 311 Kan. 456, 461, 462 P.3d 173 (2020).

7

Although Wolf did not make any statements concerning the use of the syringes, the instruction, taken as a whole, could not have reasonably misled the jury. The district court instructed the jury on other factors including:

- "The proximity of the object, in time and space, to a direct commission of a drug crime.
- "The proximity of the object to controlled substances.
- "The existence of any residue of controlled substances on the object.
- "The existence and scope of legitimate uses for the object in the community.
- "Any evidence that alleged paraphernalia can be or has been used to store a controlled substance or to introduce a controlled substance into the human body as opposed to any legitimate use for the alleged paraphernalia."

Each factor was present. Both proximity factors were present because the syringes were near the vials in the same bag, in the purse, and near controlled substances—methamphetamine and fentanyl. Wolf neither suggested legitimate uses for the syringes nor admitted an illegitimate use for the syringes; she insisted the illegal objects were not hers. And Williams testified to the purported use of the syringes to inject the substances. The evidence did not dispute the syringes as drug paraphernalia, and Wolf made no attempts to show that the syringes were not drug paraphernalia.

"[J]urors are presumed to follow their instructions." *State v. Weis*, 47 Kan. App. 2d 703, 714, 280 P.3d 805 (2012). The district court instructed the jury to weigh only the evidence within the record, so it is presumed that the jurors did not weigh the lack of statements concerning the syringe's use. Taken as a whole, the jury instructions fairly and properly stated the law as applied to the facts and could not have reasonably misled the jury.

Affirmed.